[No. E006975. Fourth Dist., Div. Two. Mar. 18, 1993.]

In re the Marriage of WENDY and KARL SELIGMAN.
WENDY SELIGMAN, Appellant, v.
KARL SELIGMAN, Respondent.

## COUNSEL

Covington & Crowe and Donald G. Haslam for Appellant.

Lais & McCall, Ronald E. Lais, Paul Taylor Smith and Ian McLean for Respondent.

## OPINION

**McDANIEL, J.\***—After the underlying dissolution proceeding was filed by Wendy Seligman (wife), she and Karl Seligman (husband) each filed separate, verified petitions in bankruptcy. Scheduled in wife's petition were items of the parties' community property, specifically identified, which she alleged under penalty of perjury[1] to be exempt by statute from administration as part of her bankrupt estate.

At the conclusion of the latter portion of a bifurcated trial, conducted for the purpose of dividing this property, the trial court effected a division of several hundred items between husband and wife and ordered husband to pay wife $4,831.50 to "equalize" the division noted. This property division and equalization order were later memorialized in a formal, written judgment dated March 21, 1989. By the terms thereof additional items remained to be divided. Such final division was accomplished by a further judgment on reserved issues dated June 21, 1989.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.

[1]Wife subscribed her oath as to the correctness of schedule B-4, on which the exempt property was itemized, at Ontario, California, on May 13, 1987.

In challenging on appeal the judgments which divided the personal property noted, wife makes the contention that "The discharge in bankruptcy deprives the superior court of jurisdiction to divide property belonging to the bankruptcy [*sic*] petitioner and also bars the superior court from ordering her to make an equalization payment." *In passing, we note that the trial court ordered husband and not wife to make the equalization payment.* More important, because the court undertook to divide only property which wife herself alleged to be exempt from bankruptcy administration and which her trustee later abandoned, it is disingenuous, if not brazen, to argue that the court had no jurisdiction to enter the judgments it did. In short, beyond advancing a wholly frivolous contention on appeal, wife has not even attempted to demonstrate error, and so we shall affirm the judgment.

### SYNOPSIS OF THE TRIAL COURT PROCEEDINGS

After 12 years of marriage, wife filed for dissolution of her marriage to husband. Later, husband filed in Nevada a petition under chapter 7 of the federal Bankruptcy Act.[2] Wife followed suit, filing her petition two months later in California. Wife named husband as a creditor in her petition. More particularly, in her schedule A-3, wife declared under oath that the amount of her debt to husband was "unknown," *not "unliquidated."* Otherwise, in schedules B-1 and B-2 wife listed what actually consisted of community property which she valued at $242,375. In her schedule B-4, wife listed property in her possession, also community property, which she claimed to be exempt under the laws of the State of California, and which she valued at $68,700.[3]

About one year after wife's bankruptcy petition had been filed, the trial began on April 14, 1988. According to the trial court's notes, midway through the morning and wholly without any preliminaries, Attorney Fred M. Cohen was brought to the counsel table and associated as one of the counsel for wife. At that juncture, Mr. Cohen presented counsel for husband with a copy of a so-called supplemental trial brief. A recess was called to afford husband's counsel an opportunity to peruse it. This brief, after five pages of marshalling of authorities, included a "summation" which stated, "Based upon the authorities cited, there are no property issues remaining for this Court to determine. . . . [¶] . . . this Court does not have jurisdiction over any other assets that the parties may have had an interest in as

---

[2]In our view, the husband's petitioning in bankruptcy has no bearing or impact on these proceedings. Of course, neither does wife's, but because she argues that it does, it requires analysis and comment.

[3]We take judicial notice of the fact that Trustee Philip Wagner filed a "no-asset" report in wife's bankruptcy proceeding on June 2, 1988.

community property assets prior to commencement of the respective bankruptcies and prior to commencement of these dissolution proceedings. . . . [¶] The only remaining issues, then, are that of spousal and child support and satisfaction of the tax liabilities. . . ."

The upshot of this tactical sortie, during the course of the trial on April 14, 1988, was the trial court's order to bifurcate, for immediate determination of the support issues, and for later resolution of the jurisdictional question and hence the property division issues. The court eventually decided it *did* have jurisdiction to divide the community personal property of the parties in the possession of wife, the very same property which she herself had scheduled as exempt from bankruptcy administration and which the trustee had abandoned.[4]

With reference to the actual division of the exempt and abandoned property, the trial court instructed the parties, in effect, to bid on each of several hundred items. On the basis of these "bids," specific items were awarded, respectively, to each party. Such division awarded to wife $20,705 in art works and sculpture, $22,963 in furniture, $11,525 in collections and collectibles and $8,000 in china. A second order was required to effect a final division of all of the items which the parties each acknowledged were to be divided.

Although the timeliness thereof was disputed, wife moved for a new trial. The motion was denied, and this appeal followed.

## DISCUSSION

In pursuing her appeal, wife urges that the judgment should be reversed because, as she argues, under 11 United States Code section 523(a)(5)[5] there is no exemption of property from the bankruptcy proceedings such as would allow division of that property in the dissolution of a marriage, and so the trial court, she argues further, had no jurisdiction to make the property division which it made in the judgments of March 21 and June 21, 1989. ■ As can be readily discerned from the text in the margin, the cited section has absolutely nothing to do with the subject of jurisdiction; *it*

---

[4]The trustee's "no-asset" report of June 2, 1988, was filed before the trial court's ruling that it did have jurisdiction.

[5]Title 11 United States Code Annotated section 523(a)(5) in effect in 1988 stated in relevant part, "(a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—[¶] (5) to a spouse, former spouse, . . . for alimony to, maintenance for, or support of such spouse . . . in connection with a . . . divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement . . . ."

*deals with the survivability of certain kinds of family law orders after a discharge in bankruptcy.*

On the other hand, 11 United States Code Annotated section 522(b) states, "Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. . . . Such property is—[¶] (2)(A) any property *that is exempt under* Federal law, . . . or *State or local law* that is applicable on the date of the filing of the petition . . . ; and [¶] (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law."[6] (2) With reference to such property, once it is determined to be exempt, under either federal or state law, it is no longer part of the bankruptcy estate. (*Matter of Paderewski* (9th Cir. 1977) 564 F.2d 1353, 1356; *Browne* v. *San Luis Obispo National Bank* (9th Cir. 1972) 462 F.2d 129, 132; *Rogers* v. *Rogers* (Utah 1983) 671 P.2d 160, 165.)

Referring to state law in effect in 1987 when wife filed her petition in bankruptcy, California Code of Civil Procedure exempted from bankruptcy an extensive list of property. (Code Civ. Proc., §§ 704.010-704.850.) In general, and relevant to this appeal, exempt items included household furnishings and appliances, works of art, jewelry, heirlooms, wearing apparel, other personal effects and articles, and homesteads. Wife claimed exempt property almost verbatim per Code of Civil Procedure sections 704.760, 704.010. 704.020, and 704.040: "Residence," an automobile, "Household furnishings," "Jewelry, art objects" and "Personal effects and clothing."[7]

Returning to the appeal, it seems unmistakably clear that wife's principal contention is that her discharge in bankruptcy, without more, operated to deprive the state court of jurisdiction to divide between the spouses the community property in her possession. More particularly, her brief states, "It is clear from the timing of the bankruptcy petitions that [wife] and [husband] intended to discharge their obligations to one another as well as their obligations to third parties. In spite of the ruling of the trial

---

[6]Title 11 United States Code Annotated section 522(c) further stated, "Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, . . . before the commencement of the case, except—[¶] (1) a debt of a kind specified in section . . . 523(a)(5). . . ."

[7]Wife filed in bankruptcy under chapter 7 of the federal Bankruptcy Act, liquidation of debts. The cited provisions operate to exempt property from administration under chapter 7. (Cf. *In re De La Rosa* (Bankr. S.D.Cal. 1987) 74 Bankr. 63, 64.)

court, it is clear that this is what they did. Both of them received their discharges before the court divided the personal property and ordered [wife] to make an equalization payment."[8]

In an attempt to understand better the elements of this novel theory on the jurisdiction question, we called up the trial court file. That file contains two briefs prepared by wife's bankruptcy attorney, Fred M. Cohen. We have read these two briefs and, in our view, they finally can be distilled down to a self-contradiction.

To demonstrate this contradiction, we shall summarize Mr. Cohen's separate presentments to the trial court. As noted, wife scheduled husband as a creditor in her bankruptcy petition. On this, Mr. Cohen said, "No specific dollar amount [was] indicated because the actual amount owed (if any) had not yet been determined. Indeed, the exact amount, if any, is still unknown. However. . . it was not necessary to state a specific dollar amount simply because there would be no distribution of assets." After explaining the legal basis in both federal and state statutes for claiming certain property as exempt from bankruptcy administration, Mr. Cohen contended, after the trustee in bankruptcy had abandoned the property scheduled by wife as exempt, that "the net effect of this is that the personal property is [wife's]." In other words, Mr. Cohen concluded, "In essence, each party retains whatever personal property he or she had at the time of the filings of their respective bankruptcy petitions. [Wife] makes no claims against those items of personal property which [husband] has in his possession." This conclusion is the basis for Mr. Cohen's argument, as earlier quoted, that the state court "does not have jurisdiction over any other assets that the parties may have had an interest in as community property assets prior to commencement of the respective bankruptcies and prior to commencement of these dissolution proceedings. . . ."

With further reference to Mr. Cohen's papers, in his supplemental trial brief of April 14, 1988, he stated, "Pursuant to section 541 of the Bankruptcy Code, all non-exempt assets of the debtor pass to the bankruptcy estate upon the filing of a Chapter 7 petition. To the extent such assets remain unliquidated, title thereto has passed to the Chapter 7 Trustee and this Court does not have jurisdiction over same. Likewise, [wife] has no claim thereto because those assets ceased to be community assets upon the filing of [husband's] Chapter 7 petition."

Yet in his supplemental brief of June 13, 1988, he stated, "[Husband] would have the court believe that there is a transmutation of community

---

[8]Again, it was husband who was ordered to make the equalization payment.

property into separate property *prior* to a Family Law court order awarding certain community property to one spouse and other community property to the other spouse. This is *not* the status of the law. See, *Matter of Paderewski*, 564 F.2d 1353 (9th Cir. 1977). [*sic*] In that case, the Court held that once a Family Law judgment is entered dividing specific assets, those assets become the separate property of the awarded spouse. As such, the bankruptcy trustee of the bankrupt spouse could not claim any right or interest in the properties previously awarded the nonbankrupt spouse; those assets were simply not part of the bankrupt spouse's estate. No such order has yet been entered in these proceedings. Consequently, neither spouse has yet been awarded any community property in kind." (Italics in original.) Mr. Cohen stated again, "Abandonment [by the trustee] *does not transmute community property into separate property; only a pre-existing court order could have done that.*" (Italics added.)

To summarize the foregoing, it appears that Mr. Cohen's initial position was that filing in bankruptcy had the result that "those assets [cease] to be community assets. . . ." However, he stated in the latter brief that it is not the law that community property is transmuted into separate property "prior to a Family Law court order awarding certain community property to one spouse and other community property to the other spouse." (Italics omitted.) In our view, the latter of these contradictory statements is the correct one.

Regardless of whether the foregoing represented a contradiction, at oral argument there was no doubt about wife's position. Wife's counsel was asked, assuming that Mr. Cohen's theory be accepted as dispositive, what the status of the property would be. The exchange between the court and wife's counsel was as follows: "JUSTICE MC DANIEL: SO THE COURT HAS NO JURISDICTION. SO THE PARTIES HAVE GOT THIS PROPERTY. [¶] MR. HASLAM: RIGHT. [¶] JUSTICE MC DANIEL: OR [WIFE] HAS IT. WHAT HAPPENS TO IT? [¶] MR. HASLAM: WELL, YOUR HONOR, JUST ONE ADDITION, SHE HAS SOME. HE HAS SOME.[9] [¶] JUSTICE MC DANIEL: IS IT JUST—THEY JUST PART NOW AND THEY JUST KEEP WHAT THEY'VE GOT. [¶] MR. HASLAM: YES. [¶] JUSTICE MC DANIEL: IS THAT IT? [¶] MR. HASLAM: YES. AND THAT RELATES TO THE IMPACT OF THE BANKRUPTCY LAW. THAT'S THE SAME AS IT IS WITH ANY KIND OF A DEBT, AND IT RELATES TO THE FRESH START DOCTRINE THAT IS SO MUCH A PART OF THE BANKRUPTCY CODE."

The effect of the foregoing proposition, advocated by wife, is that the ultimate ownership and right to possession of personalty, abandoned by the

---

[9] As best as we can determine from the record and the trial court file, none of the property divided by the judgments appealed from was or is in husband's possession.

trustee in bankruptcy, *depends on pure chance*, i.e., under wife's contention, whoever happens to have possession of the abandoned property when discharge occurs ends up owning it. We suggest that community property rights cannot be divested on any such gaming theory.

Take this scenario: Wife, over the years, slowly accumulated $136,049 worth of personal property (actually, the amount divided by the judgment of Mar. 21, 1989), and stored it in one of those self-storage operations. Then she filed a petition to dissolve the marriage. Next, she petitioned in bankruptcy, listing her husband as a creditor and scheduling all the property in the self-storage locker as exempt. Wife's trustee then abandoned the stored property, as here, after which wife obtained a discharge in bankruptcy. As argued by wife to the trial court and on this appeal, the *prospective* division of the scheduled community property by the family law court created a debt which was then discharged in bankruptcy, with the result that ipso facto the abandoned community property became wife's separate property which wife argued the family law court had no jurisdiction to divide. By this legal legerdemain, if permitted, husband would have been euchred out of $68,024.50 worth of what once was community property by means of some unilateral, mystic transmutation which he was powerless to forestall. The scenario recounted above, in effect, describes the proposed disposition of this case, as urged upon us by wife. Its recounting is enough to demonstrate its absurdity.

A correct analysis of the jurisdiction issue, in our view, starts with the recognition of an undivided one-half community interest owned by each of the parties in the exempted personal property in wife's possession and vested as such before the judgments which divided it.[10] It is manifest that the wife's scheduling of property as exempt in her bankruptcy petition did not operate to divest husband of his community interest in such property by way of transmuting it into her separate property. As correctly observed by Mr. Cohen, on one occasion, only a family law court judgment could do that. In other words, the bankruptcy court to which wife turned to file her petition never had jurisdiction over *husband's community interest* in that property. (Cf. *Matter of Tyree* (Bankr. S.D. Iowa 1990) 116 Bankr. 682.) Moreover, once wife's trustee abandoned all property she had scheduled, "any title that was vested in the trustee [in bankruptcy] was extinguished, and the title revert[ed] to the bankrupt, nunc pro tunc." (*Mason* v. *C.I.R.* (9th Cir. 1980) 646 F.2d 1309, 1310.) In other words, the bankruptcy court had no further

---

[10]It is further useful in our analysis here to ignore the husband's filing in bankruptcy, because he makes no contention that the trial court lacked jurisdiction to divide the community property in either his or wife's possession.

interest in the disposition of such property. (*Ibid.*) In short, the scheduling of the community property by wife in her bankruptcy petition did not operate to oust state court jurisdiction to deal with the community interests of these parties in what was otherwise finally adjudicated by the bankruptcy court to be exempt and abandoned property.

■ Wife makes the further argument that her prospective duty to surrender some portion of the community property to husband created a "claim" on the part of husband as "claim" is defined in 11 United States Code Annotated section 101(5)(A).[11] Not so; a court-ordered division of community property does not give rise to a "right to payment" of money as specified in the statutory definition of a claim. (Cf. *U.S.* v. *Hubler* (Bankr. W.D.Pa. 1990) 117 Bankr. 160, 163-165, affd. *U.S.* v. *Hubler* (3d Cir. 1991) 928 F.2d 1131, citing *Ohio* v. *Kovacs* (1985) 469 U.S. 274 [83 L.Ed.2d 649, 105 S.Ct. 705], and *Penn Terra Ltd.* v. *Dept. of Environ. Resources* (3d Cir. 1984) 733 F.2d 267.) In other words, a debtor's obligation which requires performance, not payment, and which performance cannot be converted into a right to a monetary payment, is not a "claim" within the meaning of 11 United States Code Annotated section 101(5)(A). (*Ibid.*) Thus, with no claim thereby arising, there can never be a discharge in bankruptcy of a prospective obligation to surrender particular property. As a consequence, wife's discharge in bankruptcy had no legal significance whatsoever to preclude the trial court's judgments of March 21 and June 21, 1989.

In sum, we reject out of hand the notion that the inchoate duty to surrender possession of particular items of community property, arising because of the prospect that such items are to be awarded to the other spouse, operates to create a debt owed by the prospective surrendering spouse which would become dischargeable in bankruptcy.

Once the "claim" argument is resolved against wife, the remainder of her case collapses like a house of cards.

More particularly, once it has been determined that wife cannot hide behind the bankruptcy laws on the pretext that husband's "claim" against her (with reference to her prospective delivery of the personalty awarded by the 1989 judgments) was nullified by her discharge, all that remains to be resolved is the jurisdiction issue per se already dealt with.

[11]On November 29, 1990, after the parties' briefs on appeal were filed, the codification of the definition of "claim" was renumbered from 11 United States Code Annotated section 101(4)(A) to the current 11 United States Code Annotated section 101(5)(A). The actual definition of "claim," however, remained unchanged. (Crime Control Act of 1990, Pub.L. No. 101-647 (1990) § 2522(e), 104 Stat. 4867.)

 Wife cites us to *In re Marriage of Williams* (1984) 157 Cal.App.3d 1215 [203 Cal.Rptr. 909], as having a "substantial similarity to the present case." We have studied that case very carefully, and cannot find even the remotest reference therein to the subject of state court jurisdiction over property exempt from bankruptcy proceedings. *Williams* involved an effort by an ex-wife to collect by levy of execution arrearages due from husband under a court ordered division of husband's retirement benefits. Husband sought to quash the writ by claiming an offset in the form of wife's nonpayment of an equalization payment, also ordered in the earlier dissolution proceeding, with reference to the division of community property. The trial court allowed husband to claim the offset, but on appeal, the judgment was reversed. The court reasoned, because wife had received a discharge in bankruptcy after division of community property, that the legal obligation of wife to make the equalization payment was wiped out. (*Id.* at p. 1221.) In other words, husband's "claim" to the equalization payment was discharged. Again, we note that there is nothing in *Williams* even remotely dealing with jurisdiction over exempt property, and therefore nothing therein to give legal credence to wife's contention that "the discharge in bankruptcy deprives the superior court of jurisdiction to divide property belonging to the bankrupt [wife]."

Postulating with reference to the two aspects of the lack-of-jurisdiction contention, urged by wife in support of her appeal, we hold that wife's discharge in bankruptcy was ineffective to insulate her from husband's right to a division of the community personal property, as accomplished by the challenged judgments. We hold further that wife's scheduling of certain personal property as exempt in her bankruptcy petition did not transmute it from community property into her separate property. We hold yet further, once wife's trustee in bankruptcy abandoned everything she had scheduled by filing his "no asset" report, that property was no longer subject to disposition by the bankruptcy court. Thus, if the community property was not transmuted by its initial scheduling as part of wife's bankruptcy petition, and if that property was later abandoned by the trustee, with the result that it was no longer to be administered in settling wife's bankrupt estate, there was no impairment whatsoever to the trial court's exercise of its traditional jurisdiction to divide the community property between the erstwhile spouses.

For the reasons stated, we hold finally that the trial court had jurisdiction to enter the judgments of March 21 and June 21, 1989, and that no error in reaching those judgments has been demonstrated.

## Disposition

The judgments of March 21 and June 21, 1989, are affirmed. The stay of those judgments shall be lifted forthwith upon filing of the remittitur in the trial court.

Ramirez, P. J., and McKinster, J., concurred.