**In re David C. EMELITY, Debtor.**

No. 94–04555–A7.

United States Bankruptcy Court, S.D. California.

July 5, 2000.

Radmila A. Fulton, Law Offices of Radmila A. Fulton, San Diego, CA, for Debtor.

Thomas B. Gorrill, Law Offices of Thomas B. Gorrill, San Diego, CA, for Michelle Emelity.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

David C. Emelity ("Debtor") moved to avoid and expunge the lien of Michelle Emelity ("Michelle"), his former spouse, on the ground that it violated the discharge injunction under 11 U.S.C. § 524.[1] Michelle's lien arose from a postpetition judgment awarded in her favor in connection with the division of community property. At issue is whether the debt associated with Michelle's lien is a prepetition debt and therefore dischargeable.

This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## FACTS

Debtor and Michelle separated on March 11, 1993. The marriage was terminated in November 1993, but the superior court retained jurisdiction to decide the support and division of community property issues at a later date. Debtor filed a voluntary Chapter 7 petition on April 4, 1994. The community property had not yet been divided.

Debtor listed Michelle in his bankruptcy schedules as an unsecured creditor holding a contingent and disputed claim that related to the pending property settlement in their divorce. Debtor also listed the divorce proceeding on his Statement of Affairs. Michelle did not file a complaint to determine the dischargeability of the alleged debt nor did she object to the Debtor's discharge.[2] Debtor received his discharge on September 3, 1994.

In February 1996, after trial on the property division issues, the superior court set a value on Debtor's medical practice at $20,000 and ordered Debtor to pay a $10,000 equalization payment to Michelle. Michelle recorded a judgment lien reflecting the equalization payment on February 5, 1997.

Debtor acquired an interest in real property after his discharge. Debtor is in escrow to sell the property but, because of Michelle's lien, he is unable to provide clear title to the buyer. Debtor therefore filed a motion to reopen his bankruptcy

---

1. Hereinafter all references to section numbers are references to the United States Bankruptcy Code.

2. This bankruptcy case was filed prior to the 1994 amendments and the enactment of § 523(a)(15).

case to avoid and expunge the lien on the ground that it violated the discharge injunction under § 524. The motion to reopen was unopposed; the case was reopened on June 8, 2000.

## DISCUSSION

Debtor argues that he properly scheduled Michelle's claim and because she never filed a motion for relief from stay, nor a dischargeability complaint, the debt has been discharged. Therefore, Michelle's lien should be expunged and declared null and void.[3]

In contrast, Michelle argues that the discharge did not deprive her of her ownership interest in the medical practice. She further argues that the debt in question was not discharged because it arose postpetition. Michelle relies on *In re Marriage of Seligman,* 14 Cal.App.4th 300, 18 Cal.Rptr.2d 209 (1993) and argues that the case stands for the proposition that a court-ordered division of community property does not give rise to a right to payment of money and is therefore not a claim within the meaning of the Bankruptcy Code ("Code").

■■■ A discharge in bankruptcy discharges debts. § 524(a)(1). A "debt" means liability on a claim. § 101(12). A "claim" means a

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or a right to an equitable remedy for breach

of performance if such breach gives rise to a right to payment. . . .

§ 101(5). The Code includes a right to payment that is both contingent and disputed within the definition of claim. "By providing for the 'broadest definition of claim' Congress intended to ensure that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.' " *In re Hassanally,* 208 B.R. 46, 50 (9th Cir. BAP 1997) (citations omitted). "This policy promotes the debtor's fresh start." *Id.* (citation omitted).

■■■ A key phrase in § 101(5) is "right to payment." "While state law determines the existence of a claim based on a cause of action, federal law determines when the claim arises for bankruptcy purposes." *Id.* at 50 (*citing Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991)). Moreover, notice and due process affect the bankruptcy court's ability to discharge claims. *Id.* at 54. In deciding whether Michelle's right to the equalization payment was discharged, a tripartite analysis is involved: Does a claim exist under state law? If so, when did it arise under bankruptcy law? And, did the creditor receive proper notice?

## A. THE EXISTENCE OF THE CLAIM UNDER STATE LAW.

■■■ The existence of Michelle's claim under state law is indisputable. The superior court ordered Debtor to pay Michelle the $10,000 equalization payment in connection with the division of community property. Michelle had a right to payment

---

**3.** In a motion for reconsideration, Debtor argued that *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) applies. The Court disagrees. In *Sanderfoot,* the Supreme Court eliminated the ability to avoid judicial liens where title is transferred to the debtor. The Supreme Court held that the debtor, who received title to the community residence in fee simple, could not avoid the judicial lien securing his wife's share of the equity. The Court reasoned that the debtor did not possess his new fee simple interest

before the lien "fixed" so § 522(f) was not available. Here, Debtor did not receive title to the community residence. Rather, Michelle's lien was recorded against property that the Debtor obtained postpetition and which is his separate property. Further, Michelle's lien was recorded against the property almost a year after the superior court awarded the equalization payment in her favor. Finally, at no time has Debtor argued that Michelle's lien impairs an exemption.

for which Debtor was liable. However, the Court must look to federal law to determine whether the claim arose before or after Debtor's bankruptcy filing.

## B. *THE CLAIM AROSE PREPETITION.*

Michelle argues that *Seligman,* 14 Cal. App.4th at 300, 18 Cal.Rptr.2d 209, stands for the proposition that a state court's division of community property, claimed exempt and abandoned by the trustee, does not constitute a "claim" within the meaning of the Code. In *Seligman,* the superior court divided community property after the wife had filed bankruptcy and ordered the wife to surrender certain items of personal property in her possession.[4] The wife appealed, contending that her discharge in bankruptcy deprived the superior court of jurisdiction to divide the community property. In analyzing the lower court's jurisdiction, the appellate court found, *inter alia,* that the division of community property did not require payment of any kind and required only the wife's performance to surrender certain personal property items. The appellate court concluded such performance was not a "claim" within the meaning of the Code.[5] *Id.* at 309, 18 Cal.Rptr.2d 209.

The Court finds *Seligman* factually distinguishable from the instant case. The dischargeability of an equalization payment was not at issue before the court because it was the husband, and not the wife, who was ordered to make the payment. Further, there is more involved here than simply a surrender of some personal property items. The superior court ordered Debtor to pay $10,000 to Michelle. The only similarity between this case and *Seligman* is that the debtors in both cases seek to avoid obligations arising out of their divorce.

"A contingent claim is a debt 'which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.' " *Hassanally,* 208 B.R. at 50 (citation omitted). It is well settled that a contingent claim can constitute a "debt." *Id.*

Even though the legislative history indicates that Congress intended an expansive definition of the term, courts have struggled with how far the concept of a contingent claim should be expanded. One court observed that while a claim in bankruptcy encompasses even contingent rights to payment, for that term to have meaning, it must have limits. *In re CD Realty Partners,* 205 B.R. 651, 656 (Bankr.D.Mass. 1997) (noting that a contingent claim "might be said to exist somewhere on a continuum between being and nonbeing"). Accordingly, bankruptcy courts have devised various tests in order to establish a cut-off point for a contingent claim. The outcome of the case may very well depend upon the test applied.

### 1. *The Right to Payment or Accrued State Law Claim Test.*

One line of cases holds that a debt arising from a postpetition dissolution decree accrues at the time the state court issues an order creating a right to payment. In these cases the debt at issue is viewed as arising postpetition and is therefore nondischargeable. *See In re Arleaux,* 229 B.R. 182, 186 (8th Cir. BAP 1999) citing *McSherry v. Trans World Airlines, Inc.,* 81 F.3d 739, 740–41 (8th Cir.1996) (claim does not arise in bankruptcy until a cause of action has accrued under non-

---

4. The husband was ordered to make an equalization payment to the wife.

5. The appellate court also found that the wife's scheduling of certain personal property as exempt in her bankruptcy petition did not transmute it from community property into

her separate property. The court further held that once wife's trustee in bankruptcy abandoned everything she had scheduled by filing his "no asset" report, that property was no longer subject to disposition by the Bankruptcy Court. *Id.* at 310, 111 S.Ct. 1825.

bankruptcy law); *In re Berlingeri, M.D.,* 246 B.R. 196, 199 (Bankr.D.N.J.2000) (same); *In re Scholl,* 234 B.R. 636, 641 (Bankr.E.D.Pa.1999) (noting that when a right to payment arises must be resolved by reference to state law). These courts looked to state law to determine when the right to payment accrues.

Under the so-called "right to payment" or "accrued state law claim" test, which these courts applied, a claim does not arise in bankruptcy until an action has accrued under relevant substantive nonbankruptcy law. *Hassanally,* 208 B.R. at 51. However, the right to payment or accrued state law claim test is no longer viable in the Ninth Circuit because "it interprets the term claim more narrowly than Congress intended." *Id.*

Moreover, to the extent these decisions are based solely on *In re Matter of Frenville Co., Inc.,* 744 F.2d 332 (3d Cir.1984), cert. denied, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), that case has been universally criticized and is not followed outside the Third Circuit. *Hassanally,* 208 B.R. at 51 (citations omitted). "The *Frenville* court confuses 'a "right to payment" for federal bankruptcy purposes with the accrual of a cause of action for state law purposes.'" *In re Jensen,* 127 B.R. 27, 30 (9th Cir. BAP 1991) (citation omitted). Accordingly, the Court must reject those cases which rely on the right to payment or accrued state law claim test.

### 2. *The Fair Contemplation or Prepetition Relationship Test.*

 Ninth Circuit law suggests that where the parties could have fairly contemplated a claim prior to bankruptcy, the claim will be held to have arisen prepetition, even when the actual right to payment matures postpetition. *California Dep't of Health Services v. Jensen (In re Jensen),* 995 F.2d 925, 930 (9th Cir.1993). The so-called fair contemplation test espoused in *Jensen* has been found to be equivalent to the prepetition relationship or *Piper* test. *Hassanally,* 208 B.R. at 52

(citations omitted). Under the *Piper* test there must be some prepetition relationship, such as contract, exposure, impact, or privity, between the debtor's prepetition conduct and the claimant in order for a future claimant to have a claim under the Code. The relationship must be of such degree that the claim could fairly have been contemplated by the parties prepetition. The prepetition relationship test has been most often applied to tort and statutory environmental claims.

Although the claim at issue is neither tort nor statutory, the fair contemplation test and prepetition relationship test offer guidance in this case. One court noted:

> The general principle is that a claim in the form of an unmatured or contingent right to payment can fairly be deemed to arise prepetition if, prior to the bankruptcy filing, the possibility of the claim was in the contemplation of the parties. The concept is the same, regardless of whether the claim was in the contemplation of the parties because they were "acutely aware" of one another, because a legal relationship such as a contract covering the potential claim existed between the parties, or because there was some 'contract, exposure, impact, or privity' between the parties involved in a tort. *Big Yank Corp. v. Liberty Mut. Fire Ins. Co. (In re Water Valley Finishing, Inc.),* 203 B.R. 537, 541 (S.D.N.Y.1996), *rev'd* on other grounds, 139 F.3d 325 (2nd Cir.1998).

It is undisputed that Debtor and Michelle had an extensive prepetition relationship. The claim at issue is rooted in the parties' dissolution proceeding which was pending at the time of Debtor's filing. It can also be said that the dissolution proceeding triggered Debtor's potential liability. Even though the marriage was terminated prepetition, both parties were aware that the division of community property would be made at a later time. Thus, the Court finds that it was within the fair contemplation of the parties that a contingent claim regarding the property division

existed at the time of Debtor's bankruptcy filing. "The policies of the Bankruptcy Code are best served by an inclusive interpretation of 'claim', as 11 U.S.C. § 101(5) contemplates." *Hassanally,* 208 B.R. at 53.

### C. *NOTICE AND DUE PROCESS.*

■ Debtor listed Michelle as an unsecured creditor with a contingent and disputed debt. Debtor also listed the pending divorce action in his Statement of Affairs. Michelle was therefore put on notice that Debtor sought to discharge any marital debts that arose from the pending property division.

Although the scheduling of Michelle's claim resulted in the debt being dischargeable, this may not always be the case. Scheduling a debt is important for notice purposes. Nonetheless, the claim-debt analysis is still required because a discharge extinguishes only rights to payment. *See Gendreau v. Gendreau,* 122 F.3d 815, 818–19 (9th Cir.1997) (an interest in property such as pension funds is not dischargeable); *In re Granados,* 214 B.R. 241 (Bankr.E.D.Cal.1997) (same).

### D. *MICHELLE'S REMEDY.*

■ Although the result may appear harsh, Michelle may have a remedy. The discharge does not preclude a state court from modifying an alimony award based upon "changed circumstances" such as the discharge of a property settlement debt. *In re Siragusa,* 27 F.3d 406, 408 (9th Cir.1994). This Court makes no determination whether Michelle may or may not be entitled to such a modification as that is within the jurisdiction of the state court.

### CONCLUSION

Michelle's right to payment, albeit contingent, disputed and unliquidated, arose prepetition. The debt arising from the equalization payment was therefore discharged. The lien should be expunged because it is null and void. *In re Boni,* 240 B.R. 381, 384 n. 5 (9th Cir. BAP 1999).

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.