**Russell Dean MILLER, Debtor.**

**Millie Nelson (aka Mildred Nelson), Plaintiff,**

**v.**

**Russell Dean Miller, Defendant.**

**Bankruptcy No. 99–41132.**
**Adversary No. 00–4019.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Lafayette.

Oct. 16, 2001.

Kimberly Gilbert, James Schrier, Lafayette, IN, for plaintiff.

Joseph Bartlett, Lafayette, IN, for defendant/debtor.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

Plaintiff and the Debtor/Defendant were formerly husband and wife. Their marriage was dissolved by the Tippecanoe Circuit Court. Although their marriage was dissolved, issues concerning the division of their marital property and the apportionment of their debts were not decided. Those issues remained under advisement with a court appointed arbitrator when the debtor filed his bankruptcy petition on November 3, 1999.[1] Plaintiff filed this adversary proceeding in order to obtain a declaration concerning the dischargeability of any obligations that might be imposed upon the debtor by the state court. The complaint is based upon § 523(a)(15) of the United States Bankruptcy Code.

In that any domestic relations decree involving the Plaintiff and Defendant would be entered by the state court after the date of the debtor's petition, this court questioned whether such an obligation would constitute a pre-petition debt to which § 523(a)(15) could be applied. The parties filed briefs addressed to the issue, the court then heard oral arguments, and the issue was taken under advisement.

The court now decides that, regardless of the outcome of the divorce proceeding, any obligations that the state court might impose upon the debtor in its eventual decree do not represent debts that are subject to being discharged in this bankruptcy case.

■ A Chapter 7 discharge is effective only as to "debts that arose before the date of the order for relief. . . ." 11 U.S.C. § 727(b). In a voluntary case, the order for relief occurs at the moment of filing. 11 U.S.C. § 301. Consequently, "[d]ebts arising after the bankruptcy case has commenced are not discharged." *Matter of Rosteck*, 899 F.2d 694, 696 (7th Cir.1990). The question before the court is whether obligations imposed upon a debtor by a state court decree dividing marital assets and liabilities between a debtor and its former spouse arise before or after the date of the petition, where no decree has been entered as of the date the debtor filed bankruptcy.

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). A claim is "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

> By defining a debt as a liability on a claim, Congress gave debt the same broad meaning it gave claim. . . . [T]he concepts of debt and claim are coextensive: a creditor has a claim against the debtor; the debtor owes a debt to the creditor. . . . In other words, when a creditor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred

---

[1] By an order issued on February 28, 2000, this court terminated the automatic stay, without prejudice to the rights of the trustee, to allow a division of the parties' marital property and debts. As of the date the court heard arguments concerning the issue presently before it, the arbitrator had not yet rendered a decision.

a debt to the creditor. *In re Energy Coop., Inc.*, 832 F.2d 997, 1001 (7th Cir. 1987) (citations and internal quotation marks omitted).

Through these definitions, the current Bankruptcy Code establishes an extraordinarily broad definition for debts and claims. This language was a departure from the prior Bankruptcy Act and signaled an intent to create the broadest possible definition of claim, so that "all legal obligations of the debtor, no matter how remote or contingent, would be dealt with in the bankruptcy case." *See, In re Kewanee Boiler Corp.*, 198 B.R. 519, 527 (Bankr.N.D.Ill.1996).

▌ Both parties point to the Congressional intent behind the breadth of these definitions to argue that any obligations which might be imposed upon the debtor by the state court's yet to be issued decree are contingent debts. *See, In re Emelity*, 251 B.R. 151 (Bankr.S.D.Cal.2000). The court disagrees. Despite the breadth with which debts and claims have been defined, logic dictates that the concept cannot be limitless. *See, e.g., Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir.2000). For courts, the conundrum has been to identify or articulate just where these limits lie.

Various approaches have been devised in an attempt to solve this puzzle. One approach emphasizes the "right to payment" language of § 101(5)(A) and equates a claim solely with a right to payment under non-bankruptcy law. Until the right to payment has accrued under state law, there is no bankruptcy claim. *See, e.g., In re Frenville*, 744 F.2d 332 (3rd Cir.1984). Under this approach, given the absence of a decree, Plaintiff would not have a claim because it does not seem that Indiana law recognizes an obligation under a domestic relations decree until the decree has been entered. Until then, the former spouses are joint tenants of marital property, *see,* *e.g., Poulson v. Poulson*, 691 N.E.2d 504, 506 (Ind.App.1998); *Smith v. Smith*, 131 Ind.App. 38, 169 N.E.2d 130 (1960); I.C. 32–4–1.5–15, and their obligations to one another with regard to joint debts would seem to be established by the same rules that govern the rights and responsibilities of any co-obligor who is called upon to pay a joint debt. *See, e.g.,* I.C. 26–1–3.1–419(e); 18 Am.Jur.2d, Contribution §§ 31–34; 74 Am.Jur.2d, Suretyship §§ 1, 24–25; 12 Am.Jur.2d, Bills and Notes §§ 439–440.

A second approach focuses upon a debtor's pre-petition conduct. It holds that so long as the conduct giving rise to the creditor's right to payment occurs prior to the petition, the resulting right to payment is a claim, assertable, and thus dischargeable, in bankruptcy. *In re Edge*, 60 B.R. 690, 705 (Bankr.M.D.Tenn.1986). *See also Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir.1988). Under this approach, Plaintiff would have a claim because the underlying conduct giving rise to the debt—which could be either the parties' marriage, with its consequent accumulation of property and liabilities that now needs to be divided, or the initiation of the divorce—occurred prior to the petition.

A third approach, the "fair contemplation" test, holds that where the possibility of the event triggering the right to payment is within the fair contemplation of the creditor at the time the petition is filed, the creditor has a bankruptcy claim. This approach has frequently been employed to determine when an environmental claim arises. For example, when a polluter files for bankruptcy, are the post-petition environmental cleanup and containment costs incurred in restoring the debtor's site contingent claims subject to discharge, or post-petition claims that the creditor may attempt to recover from the debtor? The Ninth Circuit faced this issue in *In re Jensen*, 995 F.2d 925 (9th Cir.

1993). In addressing whether the state environmental agency held a contingent claim, that circuit highlighted the agency's pre-petition knowledge of the debtors' deteriorating storage tank containing environmentally hazardous fungicide. This knowledge was held to be sufficient to bring the future response costs and natural resource damages within the agency's "fair contemplation" at the time the petition was filed, and, thereby, qualify those costs as a contingent claim for bankruptcy purposes. *Jensen*, 995 F.2d at 930–31.

Yet another methodology was articulated by the Eleventh Circuit when it addressed whether a representative could be appointed to represent and assert claims on behalf of all the future victims of plane crashes which would be caused by a debtor's defectively designed and manufactured airplanes. *See, Epstein v. Official Comm. of Unsecured Creditors (In re Piper Aircraft Corp.)*, 58 F.3d 1573 (11th Cir. 1995). The court concluded that the determination of whether there is a bankruptcy claim depends upon the extent of the preconfirmation relationship between the debtor and the putative class of creditors.

> [A]n individual [will have] a § 101(5) claim against the debtor ... if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact or privity ... and (ii) the basis for the liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. *Piper*, 58 F.3d at 1577.

Furthermore, the claimant must also be identifiable or part of an identifiable group. *Id.* Because the class of future claimants in *Piper* was so broadly defined—including all persons who might assert a claim against Piper based upon events occurring after confirmation arising out of or relating to aircraft or parts man-

ufactured or sold, designed, distributed or supported by Piper prior to confirmation—the court found the class did not have the necessary "preconfirmation exposure to a specific identifiable defective product or any other preconfirmation relationship" with Piper. *Id.* It therefore found that the future claimants failed to have contingent bankruptcy claims.

Although never in the context facing this court, the Seventh Circuit has examined the issue of contingent claims in bankruptcy on several occasions, observing that the uncertainty of when a party has such a claim "is amplified by the fact that the determination ... seems to hinge on the nature of the claim and the posture of the case." *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 974 F.2d 775, 781 (7th Cir.1992). This observation explains why its decisions seem to employ somewhat different standards. *Compare Fogel v. Zell*, 221 F.3d 955 (7th Cir.2000) *with AM International, Inc. v. Datacard Corp.*, 106 F.3d 1342 (7th Cir.1997) *and In re UNR Industries, Inc.*, 20 F.3d 766 (7th Cir.1994) *and In re Chicago, Milwaukee, St. Paul & Pacific R.R.Co.*, 3 F.3d 200 (7th Cir.1993) *and In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 974 F.2d 775 (7th Cir.1992). In *Datacard*, 106 F.3d 1342, *Chicago R.R.*, 3 F.3d 200, and *Chicago R.R.*, 974 F.2d 775, where the issue arose in the context of environmental claims, the court used the fair contemplation approach for determining when a claim arises. For example, in *Chicago R.R.*, the court concluded that a creditor "has, at least, a contingent claim" when it "can tie the bankruptcy debtor to a known release of a hazardous substance which [a] potential claimant knows will lead to CERCLA response costs...." *Chicago R.R.*, 974 F.2d at 786. *See also, Datacard*, 106 F.3d at 1347–1348; *Chicago R.R.*, 3 F.3d at 207. In *UNR Industries*, however—where it considered whether an asbes-

tos manufacturer's reorganization plan could permissibly bind claimants who had been exposed to the debtor's products prepetition but who had yet to manifest any injury—the court appeared to apply a prepetition conduct approach. In doing so it noted that, "[i]njuries attributable to past acts are certain to occur; although the identity of the victims remains to be ascertained, the existence of injury is real enough," and that "[b]ankruptcy separates the past and future of an enterprise, satisfying claims attributable to yesterday's activities out of existing assets...." *UNR Industries*, 20 F.3d at 770–71.

In its most recent discussion of the issue, the Seventh Circuit emphasized the importance of the creditor having "a legal right" and that until some defining event—such as a tort—occurs there is "no legal right, 'contingent' or otherwise...." *Fogel v. Zell*, 221 F.3d at 960. While it recognized that "a claim in bankruptcy may be contingent on something happening," it simultaneously noted the "practical and conceptual" troubles that arise when the contingency is the event upon which the legal right depends, *id.*, so that even the decisions that broadly allowed contingent claims "ha[d] suggested various limiting principles." *Id.* at 961–962. Because *Fogel v. Zell* was decided on other grounds, the court found it unnecessary to elaborate upon these principles; nonetheless, it candidly acknowledged that "anyway we greatly doubt that the issue is one that lends itself to governance by formula." *Id.* at 962.

Of the courts which have examined the issue presented by this case—When do the obligations arising out of the division of marital assets and liabilities between former spouses become a debt?—most have determined that the debt does not arise until the state court has entered an order. *See, e.g., Arleaux v. Arleaux*, 210 B.R. 148,

150 (8th Cir. BAP 1997), aff'd. 149 F.3d 1186 (8th Cir.1998); *In re Degner*, 227 B.R. 822, 824 (Bankr.S.D.Ind.1997); *In re Compagnone*, 239 B.R. 841, 843–44 (Bankr. D.Mass.1999). *See also, In re Beck*, 174 B.R. 64, 66 (Bankr.N.D.Ohio 1994). *But see, In re Emelity,* 251 B.R. 151, 156–57 (Bankr.S.D.Cal.2000). This result has been obtained even where there are strong prepetition indications that a judgment will be entered in favor of the non-debtor spouse. *Compagnone*, 239 B.R. at 843.

 Recognizing that whether or not a particular obligation is contingent can "hinge on the nature of the claim and the posture of the case," *Chicago R.R.*, 974 F.2d at 781, this court concludes that the approach followed by these cases is the most appropriate. Admittedly, other, earlier dates will also satisfy one or more of the commonly articulated formulations for what is a "contingent debt," *Emelity*, 251 B.R. 151, yet, whatever date you choose, those same formulations can also be used to support choosing an even earlier date the next time. For example, the date the divorce proceeding is filed seems to fulfill three of the four different tests for a contingent debt, just is readily as does choosing the date the marriage is dissolved— there is pre-petition conduct, which the creditor can fairly expect could lead to the debtor having some kind of domestic relations obligation, and the creditor is readily identifiable. How about the date one of the spouses consults a divorce attorney or the date marital difficulties first begin? Many of the same considerations that would justify using the date of dissolution or the date the divorce proceeding is filed will also justify using an earlier date, when the possibility of divorce is just a cloud on the horizon. The only difference is that the contingency is somewhat more remote. But why stop there? Given the statistical probability with which marriages fail, an argument can certainly be made that it is

the marriage, and the accumulation of assets and liabilities that will need to be divided, that should be the operative date for determining whether the debtor's spouse has a claim against the debtor—there is at least a statistically meaningful possibility of divorce and, if so, the possibility that the debtor may have debts to an identifiable creditor as a result. Why shouldn't this be enough to qualify the debtor's spouse as a creditor holding a contingent claim? A line must be drawn somewhere and to choose any date other than the date the state court actually imposes obligations on the debtor risks a potentially limitless expansion. *See, Fogel v. Zell,* 221 F.3d at 960 ("Does a pedestrian have a contingent claim against the driver of every automobile that might hit him?").

Relying upon the date of the state court's domestic relations decree to determine whether the obligations it imposes upon a debtor constitute a debt for the purposes of bankruptcy provides a bright-line standard that can be easily ascertained and readily applied by both the court and the parties. More importantly, many of the "understandable pressure[s] to expand the concept of a 'claim'," *Fogel,* 221 F.3d at 961, are not present in this case. For example, to the extent that broader formulations are concerned with ensuring equality of distribution among similarly situated parties, *Kewanee,* 198 B.R. at 528, those concerns are absent here because there is only one creditor in Plaintiff's position. To the extent a broader definition is designed to enhance the debtor's ability to effectively reorganize, *id.* at 527, those concerns are not presented by this Chapter 7 liquidation. Furthermore, unlike a corporate liquidation, where the opportunity to share in a distribution from the bankruptcy estate may provide the creditor's only chance for any recovery, domestic relations obligations will always involve an individual debtor who may be pursued after the bankruptcy.

This approach also seems to be consistent with state law. Unlike others types of actions where, for the purposes of statutes of limitations, the state courts have had to consider when a particular claim arises—is it the manufacture or delivery of a defective product, the exposure to a hazardous substance, knowledge of the defect or exposure or the actual manifestation of the creditor's injury—the court is not aware of any Indiana decisions that have had to address the possible existence of obligations under a domestic relations decree before the decree has actually been entered by the state court. Given the conceptual difficulties of trying to deal with an obligation that has not yet been (and my not be) declared to exist, this lack of authority not surprising. Furthermore, such a specialized body of state law is unnecessary. In the absence of a decree, the traditional rules concerning jointly owned property and the reciprocal obligations of joint obligors can be used to determine the duties the former spouses have to one another.

Using the date of the state court's decree as the operative date for any obligation it might impose upon a debtor also has practical advantages where dischargeability is concerned. Actions to determine dischargeability under § 523(a)(15) must be commenced soon after the debtor files bankruptcy. *See,* 11 U.S.C. § 523(c)(1); Fed.R.Bankr.P. Rule 4007(c). Yet, until a decree has been entered, it is impossible for either the debtor or its former spouse to carry the burden of proof imposed upon it by § 523(a)(15). To be nondischargeable under this portion of the Bankruptcy Code, the former spouse is required to prove that there is a debt, running in its favor, which the debtor incurred in connection with a divorce or domestic relations decree. 11 U.S.C. § 523(a)(15). If so, the debt will be non-dischargeable unless the

debtor can prove, *inter alia,* that it lacks the ability to pay this debt. 11 U.S.C. § 523(a)(15)(A). Clearly, neither of these tasks can be accomplished until the state court has actually entered its order. Until that has been done, the creditor can only talk about obligations that may or may not be imposed upon the debtor[2] and how the debtor could possibly go about attempting to prove (or the court could find) that it lacks the ability to pay a debt that has not been identified, much less quantified, is a mystery. Under these circumstances, because of the uncertainties concerning the existence and nature of debtor's liability, the bankruptcy court cannot possibly proceed or, if it does, cannot do so with any real confidence in its decision. Consequently, a rule that no debt—contingent or otherwise—exists until the state court has actually entered its order or decree promotes judicial administration, by eliminating the filing of cases that cannot go forward, and helps to ensure more accurate decisions. Both are laudable goals.

As of the date of the petition for relief, the Tippecanoe Circuit Court had not imposed any obligations on the debtor concerning the division of the parties' martial property or the allocation of their marital debts. When and if it does, those obligations, whatever they may be, will be post-petition debts and are not subject to being discharged in the debtor's bankruptcy case. Accordingly, there is no debt to which § 523(a)(15) can be applied and this adversary proceeding should be dismissed. An order doing so will be entered.

---

**2.** One should not just assume that the terms of an unissued decree will impose obligations upon the debtor running to its former spouse. At least in theory, the state court might dispose of the parties' assets and liabilities in such a way that there would be no obligations running between them or in a way that the obligations run from the former spouse to the debtor.