**In re Loddie J. BOSAK and Marilyn H. Bosak, Debtors.**

**Bankruptcy No. 98–17691.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Dec. 17, 1999.

Loddie & Marilyn Bosak, Cleveland, OH, pro se.

Irving S. Bergrin, Cleveland, OH, Myron E. Wasserman, Cleveland, OH, David Bolkmore, Wellington, OH, for debtors.

J. Anthony Logan, Dublin, OH, for David Bockmore.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this Chapter 13 case, Loddie J. and Marilyn H. Bosak (the Debtors) object to a claim against their bankruptcy estate filed by David Bolkmore. Following the conclusion of a duly noticed hearing and an examination of the record, generally, the following factual findings and conclusions of law are rendered.

Bolkmore filed his proof of claim against the Debtors' estate in the amount of $20,-445.11 (the Claim). The Debtors objected on the basis that $12,094.68 of that amount was improperly characterized as a priority unsecured claim and also on the basis that no amount is owing to Bolkmore. Thusly, they seek to have the claim denied entirely. (See, Objection to Claim).[1]

---

1. The Debtors' brief in support of their claim objection, however, states that they do not  object to Bolkmore's claim being allowed as a

In 1995, the Debtors operated a business known as Bosak Dairy and Beverage. Bolkmore operated a dairy business under the name of Rolling View Farms. On August 29, 1995, Bolkmore filed an Affidavit for Agricultural Product Lien (the Lien) against the Debtors' business in the estimated amount of $13,423.24. The validity of that lien was uncontested and arose from certain dairy products Bolkmore delivered to the Debtors' dairy and beverage business in Cleveland, Ohio. Subsequently, on March 5, 1997, the Debtors filed their petition for relief under Chapter 13. That case was involuntarily dismissed on August 5, 1998. Their second bankruptcy was filed on October 9, 1998, with plan confirmation occurring on July 8, 1999.

The dispositive issues are two-fold: (1) Whether the claim, as filed, is entitled to a secured and/or priority status; and (2) Whether a serial bankruptcy filing revives a lien that was extinguished by the dismissal of an earlier bankruptcy filing.

The Debtors contend that Bolkmore's claim is unsecured as (1) There exists no collateral upon which any prior lien could attach; (2) There was no judgment taken to perfect his lien during the life of the lien; and (3) The agricultural product lien which Bolkmore once possessed has expired as a matter of law. In response, Bolkmore asserts that: (1) His lien against the Debtors' property has not expired as their (the Debtors') second bankruptcy case was filed after the court dismissed the Debtors' first bankruptcy case but prior to that case being closed administratively; and (2) The dismissal of the Debtors' first bankruptcy case was made without notice to himself and, without the formal closing of the first case, rendered him unable to assert his rights in state court prior to the lien's statute of limitation.

An examination of the record and applicable law reveals that Bolkmore's lien has not expired, for reasons different from those asserted by Bolkmore.

The validity of a claim against a debtor's estate is to be determined in accordance with applicable state law, in the absence of overruling federal law. *Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *In re Madeline Marie Nursing Homes*, 694 F.2d 433 (6th Cir.1982). Pursuant to Ohio lien law, the following is noted:

## 1311.57 PRIORITY OF PERFECTED LIENS; RELEASE OF LIEN

(a) An agricultural producer or handler who perfects his lien within sixty days after the date of delivery, or first delivery if there was a series of deliveries under the contract of the *agricultural product* has priority over all liens, claims, or encumbrances except wage and salary claims of workers who have no ownership interest in the business of the agricultural product handler, warehouseman's liens as provided in section 1307.14 of the Revised Code, and amounts owed by the lienholder to the handler that are subject to setoff, and except that secured creditors who have security interests under Chapter 1309 of the revised Code have priority over liens perfected by agricultural handlers pursuant to section 1311.56 of the Revised Code. If several liens are obtained by several persons on the same agricultural product, the person who perfects his lien first has priority over all other agricultural product lienholders.

A producer or handler who does not perfect his lien within the time period defined in this division has the status of an unsecured general creditor.

(B) The agricultural product lien remains in effect for two years after an affidavit is recorded in the office of the county recorder under section 1311.56 of

general unsecured claim in its full amount of $20,445.11.

the Revised Code, and within that time, until one of the following occurs:

(1) The lienholder or his secured creditor receives full payment from the agricultural product handler;

(2) At the option of the lienholder or his secured creditor, less than full payment is received pursuant to a written agreement with the handler;

(3) A final judgment is entered by a court having jurisdiction in an action adjudicating the status of the agricultural product lien.

(C) Notwithstanding division (B) of this section, an agricultural product lien shall remain in effect throughout any insolvency proceedings involving the agricultural product handler named in the affidavit.

(D) After the amount of his lien has been satisfied, a lienholder shall cause the lien to be released within thirty days. O.R.C. § 1311.57.

It is undisputed by the parties that the lien held by Bolkmore was an agricultural product lien. Indeed, the Debtors acknowledge that the lien, during its effective life, was a valid lien. (See, Objection to Claim). The basis of the Debtors' objection is focused on statutory language in O.R.C. § 1311.57(B) which provides, in part, that an agricultural product lien remains in effect for two years after an affidavit is recorded in the office of the county recorder. They further contend that none of subsection (B)'s excepting provisions are applicable. Particularly, they indicate that under O.R.C. § 1311.57(B)(3), no final judgment was entered by a court of record adjudicating the status of Bolkmore's lien during the two-year life of the lien.

It is unrefuted that the lien was filed on August 29, 1995, prior to the Debtors' first bankruptcy filing which occurred on March 5, 1997. That particular bankruptcy filing affected the lien's limitation period pursu-

ant to provisions of O.R.C. § 1311.57(C) which provides:

(C) Notwithstanding division (B) of this section, an agricultural product lien shall remain in effect throughout any insolvency proceedings involving the agricultural product handler named in the affidavit.

■ The Debtors' first bankruptcy was dismissed by Court order due to a lack of plan funding. (See Order, August 5, 1998). That dismissal order was not appealed. As provided under § 349(b)(3) of the Bankruptcy Code [11 U.S.C. § 349(b)(3)], the dismissal of a case:

(b)(3):

... revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title. 11 U.S.C. § 349(b)(3).

As noted under § 349(b)(3), the case's dismissal effectively relegated the parties-in-interest to their respective postures which existed prior to the Debtors' first bankruptcy filing. The formality of closing a case is ministerial in nature and, as such, in no manner impedes the remedial rights of either party as alleged by Bolkmore. The Court's order of dismissal was an adjudicative act which, indeed, affected the parties' remedial rights by restoring them to their prepetition postures. Consequently, the tolling effect of O.R.C. § 1311.57(C) ended upon the Court's dismissal of the Debtors' first bankruptcy on August 5, 1998, notwithstanding that the case was not closed administratively until February, 1999. Notedly, Bolkmore offered no authority to support his contention to the contrary in this regard. His reliance upon the Sixth Circuit's B.A.P. decision in *Palmer* is misplaced.[2] Firstly, *Palmer* does not address the type of lien addressed herein which is expressly defined and limited in accordance with applicable state law. The *Palmer* decision, decided on legal conclusions wholly unrelated to

**2.** *In re Palmer,* 228 B.R. 880 (6th Cir. BAP 1999).

the matter at bar, is duly considered but found to be non-controlling herein.

■ Without the intervention of the Debtors' first bankruptcy filing, Bolkmore's lien, by statute, would have expired on August 29, 1997, since the lien was filed on August 29, 1995. One year and seven months of the two-year life of the lien had expired when the Debtors filed their first bankruptcy on March 5, 1997. O.R.C. § 1311.57(C), as noted above, effectively tolled the running of the lien upon bankruptcy filing. The Debtors' second bankruptcy case was filed on October 9, 1998, some two months after their first case was dismissed on August 5, 1998. As of the refiling date, the life remaining on Bolkmore's two-year lien was approximately three months. Thusly, with a residue of lien life remaining at the time of the Debtors' second bankruptcy filing, O.R.C. § 1311.57(C) once again tolled the running of the lien's life, as subsection (C) mandates that an agricultural product lien "shall remain in effect throughout any insolvency proceedings involving the agricultural product handler named in the affidavit" (i.e., Bolkmore).

Alternatively, the Debtors argue that the lien is practically ineffective as there exists no property upon which the lien could attach. They further argue that their second bankruptcy filing has obtained plan confirmation and, as such, the legal doctrine of *res judicata* precludes any present claim amendment to recognize any security interest that Bolkmore possesses.

The scope of an agricultural product lien under Ohio law has been examined. Specifically, it provides the following:

### 1309.25 PROCEEDS DEFINED; SECURED PARTY'S RIGHTS ON DISPOSITION OF COLLATERAL

(a) "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Any payments or distributions made with respect to investment property collateral are proceeds. Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "noncash proceeds."

(B) Except where sections 1309.01 to 1309.50 of the Revised Code otherwise provide, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(C) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless:

(1) A filed financing statement covers the original collateral and the proceeds are collateral in which a security interest may be perfected by filing in the office or offices where the financing statement has been filed and, if the proceeds are acquired with cash proceeds, the description of the collateral in the financing statement indicates the types of property constituting the proceeds; or:

(2) A filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds;

(3) The original collateral was investment property and the proceeds are identifiable cash proceeds; or

(4) the security interest in the proceeds is perfected before the expiration of the ten day period. Except as provided in this section, a security interest in proceeds can be perfected only by the methods or under the circumstances

permitted in sections 1309.01 to 1309.50 of the Revised Code for original collateral of the same type.

(D) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(1) In identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(2) In identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(3) In identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(4) In all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this division is:

(a) Subject to any right of set-off; and

(b) Limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings, less the sum of (i) the payments to the secured party on account of cash proceeds received by the debtor; and (ii) the cash proceeds received by the debtor during such period to which the secured party is entitled under divisions (D)(1) to (3) of this section.

■■■ The Debtors argue that the lien does not attach to any of their property. Not only is such a contention self-serving, it is also unsupported by any evidence or authority. Section 1311.55(B) and (C) of the Ohio Revised Code provides that the lien not only attaches to specified types of produce but, also, attached to the proceeds and the value of such produce. See also,

O.R.C. § 1309.25 above. The Debtors' contention in this regard is simply not substantiated. Their conclusory assertion that their dairy business closed in 1996 does not constitute sufficient proof that no lien proceeds or value exist upon which the lien could attach. As the objecting parties, the burden of proof is reposed in the Debtors. That proof must be borne by a preponderance of the evidence. Herein, that burden has not been met.

■■■ Contrary to the Debtors' assertion that Bolkmore no longer has a recognizable lien, it is a well-established principle of bankruptcy law that valid liens pass through bankruptcy proceedings unaffected.[3] Bolkmore's lien was perfected when he filed the appropriate affidavit required under Ohio law. See, O.R.C. § 1322.56(A). As determined above, the two-year life of the subject lien did not expire upon the Court's dismissal of the Debtors' first bankruptcy. The remaining lien life was tolled upon the Debtors' filing their present bankruptcy case. As such, Bolkmore possessed a secured claim to the extent of his lien. A secured creditor need not file a claim in a bankruptcy proceeding in order to preserve its lien. *In re Newman*, 887 F.2d 973, 975 (9th Cir.1989); *In re Tarnow*, 749 F.2d 464, 466 (7th Cir.1984). Thusly, Bolkmore possesses a secured claim to the extent of the value of his lien.

An examination of Bolkmore's proof of claim filed on November 24, 1997 on behalf of Rolling View Farms revealed the following:

| | | |
|---|---|---|
| Unsecured | — | $ 8,350.45 |
| Secured | — | $13,845.00 |
| Priority | — | -0- |
| Total Claim | | $22,195.43 |

As evinced, Bolkmore asserted no priority claim in the Debtors' first bankruptcy. In the Debtors' current bankruptcy case, Bolkmore's proof of claim filed on February 19, 1999 reflects the following:

| | | |
|---|---|---|
| Unsecured Priority | — | $12,094.68 |
| Secured | — | -0- |

**3.** *In re Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *Long*

*v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886).

| | | |
|---|---|---|
| Unsecured | — | $ 8,350.43 |
| Total Claim | | $20,445.11 |

It is apparent from the above data that Bolkmore mischaracterized the amount of his secured claim in the Debtors' second bankruptcy case. None of the attachments to his earlier or later proof of claim support a priority entitlement.

Accordingly, the Debtors' objection to claim is sustained, in part, and is overruled, in part.

IT IS SO ORDERED.