**In re Mark & Dennyce WALSH, Debtors.**

No. 00–15684.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

July 5, 2001.

Lee R. Kravitz, Cleveland, OH, for debtor.

Austin B. Barnes, III, Cleveland, OH, for GLS Capital –Cuyahoga, Inc.

Myron E. Wasserman, Cleveland, OH, Trustee.

## ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The Debtors, Mark and Dennyce Walsh ("Debtors"), filed their Chapter 13 petition in bankruptcy on August 1, 2000. Among the creditors scheduled in their petition was the Cuyahoga County Treasurer (the "County Treasurer") for certain unpaid real estate taxes in the amount of $4,000. Reportedly, the Debtors were unaware that GLS Capital–Cuyahoga, Inc. ("GLS") had purchased from the County Treasurer the tax certificates for the real estate taxes for 1996, 1997, and 1998 on the Debtors' personal residence located in Brooklyn, Ohio. Consequently, the Debtors did not schedule GLS as a creditor in their petition.

On November 14, 2000, the Court confirmed the Debtors' Chapter 13 Plan. At that juncture, the Debtors apparently remained unaware of GLS's claim, and GLS was not yet aware of the Debtors' bankruptcy case. The Plan included no interest payment for taxing authorities, including the County Treasurer, which had filed a claim based upon arrearages in the tax years prior to the transfer of its statutory lien interest to GLS.

Once GLS learned of the bankruptcy case in March of 2001, it filed a proof of claim in the amount of $4,764.60, plus 18% interest. The Debtors objected to that claim, on the basis that it included a component for interest that was unauthorized by the confirmed Plan. An evidentiary hearing was duly noticed and heard on the matter. At issue is whether GLS is entitled to the 18% interest rate on its claim.

Underlying those facts are a series of statutes in the Ohio Revised Code ("O.R.C.") which are referable to tax certificates. Sections 5721.30 through 5721.45 were enacted in 1998, and allow for the transfer of tax certificates from the counties to third parties. Pursuant to O.R.C. §§ 5721.32 and 5721.33, a county treasurer may conduct an auction or a negotiated sale of tax certificates. Section 5721.35(A) grants a first lien to the purchaser of such tax certificates:

> Upon the sale and delivery of a tax certificate, such tax certificate vests in the certificate holder the first lien previously held by the state and its taxing districts under section 5721.10 of the Revised Code for the amount of taxes, assessments, interest, and penalty charged against a certificate parcel, superior to all other liens and encumbrances upon the parcel described in the tax certificate, in the amount of the certificate redemption price.

Ohio Rev.Code Ann. § 5721.35.

Those statutes serve, effectively, to convey to a purchaser of tax certificates the rights and lien positions previously enjoyed by the County Treasurer. Additionally, O.R.C. § 5721.30(G) allows a rate of simple interest in the maximum amount of 18 % per annum with respect to any tax certificate sold in a negotiated sale.

Herein, GLS holds two tax certificates on which the Debtors are listed as the Parcel Owners, and the Debtors' personal residence is listed as the Property Address. The first certificate shows that it is for Lien Years 1996–1997, in the amount of $2,254.13, with a Negotiated Interest Rate of 18%. The second certificate is for 1998, for $1,545.56 plus 18%. Under state law, by virtue of O.R.C. §§ 5721.10 and 5721.35, GLS would hold a statutory first lien in the amount of $3,799.69, plus 18%, on the Debtors' residence at 9410 Ansonia Avenue, Brooklyn, Ohio.

Generally, a confirmed Plan is binding upon all creditors, whether or not it provides for their claim, pursuant to

§ 1327(a) of the Bankruptcy Code. Where a creditor does not have notice of the bankruptcy case, however, the Plan will not be given that binding effect as to that creditor. *See, e.g., In re Simpson,* 240 B.R. 559 (8th Cir. BAP 1999); *In re Sanders,* 243 B.R. 326 (Bankr.N.D.Ohio 2000). Here, GLS did not receive notice of the Debtors' bankruptcy case until March of 2001, approximately four months after their Plan was confirmed, and approximately seven months post-petition. Therefore, the confirmed Plan is not given the binding effect of § 1327(a), upon the aforesaid reasons.

■ Contrary to their filed Objection, the Debtors acknowledged at the evidentiary hearing that GLS is a secured creditor. They further acknowledge that the tax certificates were prepared and signed by the County Treasurer, and that the interest rate is in the County Treasurer's discretion, up to the maximum amount of 18%. The Debtors argue only that it would be inequitable to allow 18% on the GLS claim, when the County Treasurer's claim is capped by its own guidelines at 9%. No evidence of any guidelines addressing a 9% rate was demonstrated by the Debtors.

Section 506(b) of the Bankruptcy Code provides: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). *See also Bondholder Comm. v. Williamson Co. (In re Brentwood Outpatient, Ltd.),* 43 F.3d 256 (6th Cir.1994), *cert. denied,* 514 U.S. 1096, 115 S.Ct. 1824, 131 L.Ed.2d 745 (1995). A similar set of facts was faced in

*In re Liuzzo,* 204 B.R. 235 (Bankr. N.D.Fla.1996), in which the court held that a tax certificate constitutes an "agreement" under § 506(b), and that the certificate holder was therefore entitled to postpetition interest.

As mentioned above, the Debtors now acknowledge that the GLS claim is secured. The value of the Debtors' residential property is $87,714, according to the Cuyahoga County Auditor, and there is no superior claim to that of GLS. Considering the GLS secured claim of $4,764.60, as of the petition date against that value, GLS is therefore oversecured. Pursuant to § 506(b), GLS is entitled to postpetition interest, up to the date of confirmation. *See Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993); *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

■ In an Objection to Claim, the objecting party bears the burden of disproving the claim by a preponderance of the evidence. *In re Bosak,* 242 B.R. 400 (Bankr.N.D.Ohio 1999); *In re Vernon Sand & Gravel, Inc.,* 93 B.R. 580 (Bankr. N.D.Ohio 1988). Based upon the foregoing, the Debtors have not met their burden of proof, and GLS is entitled to the full contractual interest rate. The Debtors offer no authorities for their proposition that the interest rate should be reduced, they called no witnesses, and they have submitted no evidence to overcome the validity of the tax certificates that GLS holds. Further, the proof of claim filed by the County Treasurer is not duplicative of either tax certificate.

Additionally, it is noteworthy that the Debtors have never amended their schedules to include the GLS claim, despite the bankruptcy courts' liberal allowance for amendments to schedules. Fed. R.Bankr.P. 1009(a) (stating, "voluntary petition [or] schedule ... may be amended

by the debtor as a matter of course at any time before the case is closed").

Accordingly, the Objection to Claim of GLS is hereby overruled, and said claim is allowed as filed. In furtherance of this ruling, the prior Order confirming the Plan is hereby vacated and the Plan will be given further feasibility consideration on July 12, 2001.

**IT IS SO ORDERED.**