**In re Dallas Terry CLEVELAND, Debtor.**

No. 02–32663.

United States Bankruptcy Court, E.D. Tennessee.

Sept. 20, 2006.

Byron D. Bryant, Esq., Knoxville, TN, for Debtor.

Wilson & Associates, PLLC, Timothy F. Frost, Esq., Knoxville, TN, for Countrywide Home Loans.

Gwendolyn M. Kerney, Esq., Knoxville, TN, Chapter 13 Trustee.

### MEMORANDUM ON OBJECTION TO POST–PETITION CLAIM FILED BY COUNTRYWIDE HOME LOANS

RICHARD STAIR, JR., Bankruptcy Judge.

This contested matter is before the court on the Objection of Debtor Dallas Terry Cleveland to Post–Petition Claim Filed by Countrywide Home Loans (Objection to Claim) filed by the Debtor on May 16, 2006, objecting to the "Post–Petition Proof of Claim" filed by Countrywide Home Loans (Countrywide) in the amount of $8,563.62 on March 20, 2006 (March 20, 2006 Claim).[1]

A preliminary hearing was held on June 21, 2006, at which time a July 19, 2006 trial date was set. On the date of the trial, the court advised the parties that the Debtor's Objection to Claim raised issues of law not addressed in their respective pre-trial briefs. Rather than proceed with the trial, the court, with the agreement of the parties, entered an Order on July 25, 2006, identifying the issues it is called upon to resolve and setting forth undisputed facts taken from the record in the Debtor's case file and the Joint Stipulation of Facts filed by the parties on July 12, 2006, in anticipation of the July 19, 2006 trial. Additionally, the parties were advised that they could request an evidentiary hearing and/or object to the statement of undisputed facts as

---

1. Countrywide's "Post–Petition Claim" was filed in the amount of $8,557.98. Because the parties stipulate the amount of the claim is $8,563.62, the court will consider this to be the correct amount.

articulated by the court within ten days and that supplemental briefs were to be filed within fourteen days. Neither party requested an evidentiary hearing or objected to the statement of undisputed facts.

The parties have filed the following briefs: (1) the Brief of Creditor in Support of Proof of Claim filed by Countrywide on July 12, 2006;[2] (2) the Brief of Debtor Dallas Terry Cleveland in Support of Objection to Claim of Countrywide Home Loans filed by the Debtor on July 13, 2006; (3) the Supplemental Brief of Secured Creditor in Response to Debtor's Brief in Support of Objection to Claim of Countrywide Home Loans filed by Countrywide on July 17, 2006; (4) the Supplemental Brief of Debtor Dallas Terry Cleveland in Support of Objection to Countrywide Home Loans' Post–Petition Claim filed by the Debtor on August 15, 2006; and (5) the Supplemental Brief of Secured Creditor in Response to the Court's Order of July 25, 2006, filed on August 15, 2006.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993).

## I

The Debtor filed the Voluntary Petition commencing his Chapter 13 case on May 21, 2002. At the time that he filed his petition, Countrywide held a claim secured by the Debtor's residence, grounded on a Note and Deed of Trust executed by the Debtor on June 10, 1977. The Note, in the original principal amount of $24,350.00, called for 360 equal monthly installments of $187.25, inclusive of principal and interest at 8.5%, with the first payment due on July 1, 1977, and the final payment due on June 1, 2007. As of the date the Debtor commenced his Chapter 13 case, the unpaid balance on the Note was $11,285.56. Under the Deed of Trust, the Debtor, in addition to making the $187.25 monthly payment, was to make additional monthly payments sufficient to fund an escrow account for the annual payment of property taxes and homeowner's insurance by Countrywide.

The court entered an Order Confirming Chapter 13 Plan on August 28, 2002, confirming the Debtor's Amended Chapter 13 Plan filed July 25, 2002, as modified by a Modification of Plan Prior to Confirmation dated August 6, 2002 (collectively, Confirmed Plan). The Confirmed Plan provides for monthly payments of $550.00 to the Chapter 13 Trustee, plus all tax refunds, for sixty months, with a proposed 100% dividend to unsecured creditors plus 4% interest. The final payment scheduled to be paid to the Chapter 13 Trustee pursuant to the Confirmed Plan will be due in May 2007. The Confirmed Plan provides for payment of Countrywide's secured claim of $11,285.56 by the Chapter 13 Trustee "in full" over the life of the Plan, in monthly installment payments of $287.00, including principal and 8.5% interest. Countrywide negotiated and agreed upon its treatment under the Confirmed Plan, which will result in payment of the balance of its secured claim on or before the Plan's May 2007 termination date.

---

**2.** Although the court incorporated the parties' Joint Stipulation of Facts filed on July 12, 2006, into its July 25, 2006 Order, it did not incorporate certain documents referred to in that Order. Appended to the Brief of Creditor in Support of Proof of Claim filed by Countrywide are three exhibits: (1) the June 10, 1977 Deed of Trust executed by the Debtor in favor of Countrywide; (2) an itemized list of the escrow advances made by Countrywide from May 21, 2002, through June 6, 2006; and (3) the Chapter 13 Trustee's Status of Claims as of July 12, 2006. Because these documents are not disputed, and because they are relied upon by the parties in support of their respective arguments, they will be considered by the court in its resolution of this contested matter.

The Confirmed Plan does not provide for payment of post-petition claims by the Chapter 13 Trustee, nor does it provide for payment by the Chapter 13 Trustee to Countrywide of the escrow advances required under the June 10, 1977 Deed of Trust. The Debtor has not made any monthly escrow payments to Countrywide since he filed his Chapter 13 bankruptcy case.

On March 20, 2006, Countrywide filed its "Post–Petition Proof of Claim" in the amount of $8,563.62 representing the escrow payments made by it for the Debtor's property taxes and homeowner's insurance from May 21, 2002 through March 6, 2006.[3] The Debtor filed his Objection to Claim on May 16, 2006. Per the court's July 25, 2006 Order, the issues are as follows:[4]

(1) Whether Countrywide's "Post–Petition Proof of Claim" is, in fact, a claim that arose after the date the Debtor commenced his Chapter 13 case and, if so, whether the claim can be allowed and paid by the Chapter 13 Trustee given that the Debtor's Confirmed Plan does not provide for the payment of post-petition claims allowed under 11 U.S.C.A. § 1305 (West 2004);

(2) If Countrywide's "Post–Petition Proof of Claim" did, in fact, arise after the commencement of the Debtor's Chapter 13 case but must be disallowed because the Confirmed Plan does not provide for the payment of post-petition claims, will Countrywide's "Post–Petition Proof of Claim" survive the Debtor's discharge because it is not a debt "provided for by the [P]lan or disallowed under [11 U.S.C.A. § ] 502 [ (West 2004) ]" as required by 11 U.S.C.A. § 1328(a) (West 2004);

(3) Whether the "Post–Petition Proof of Claim," regardless of its characterization by Countrywide as "post-petition," is, in fact, a claim that is deemed to have arisen before the commencement of the Debtor's bankruptcy case which must be disallowed in its entirety because the provisions of the Confirmed Plan fixing Countrywide's secured claim at $11,285.56 are binding on Countrywide and are res judicata as to the amount of its claim pursuant to 11 U.S.C.A. § 1327(a) (West 2004); and

(4) Whether, assuming the Debtor completes his Confirmed Plan, Countrywide's "Post–Petition Proof of Claim" will be discharged pursuant to 11 U.S.C.A. § 1328(a) because Countrywide's secured claim is provided for by the Plan and is not subject to any discharge exception set forth in 11 U.S.C.A. § 1328(a).

## II

■ "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." FED.R.BANKR.P. 3001(f). Post-petition claims may be included within a Debtor's bankruptcy case.[5] Here, as the

---

3. Of this amount, $372.20 was advanced by Countrywide prior to the commencement of the Debtor's case on May 21, 2002, but since then, and continuing through June 26, 2006, Countrywide has advanced $8,191.42 to cover the escrow expenses for payment of the Debtor's property taxes and homeowner's insurance premiums.

4. The following are not verbatim quotes from the July 25, 2006 Order.

5. Subsections (a) and (b) of § 1322 (11 U.S.C.A. § 1322 (West 2004)) set forth, respectively, those provisions of a Chapter 13 plan that are mandatory and those that are optional. Among the optional provisions that a debtor may include in his or her plan is a provision for the payment "of all or any part of any claim allowed under section 1305." 11 U.S.C.A. § 1322(b)(6). Section 1305 allows the filing of a post-petition proof of claim "(1) for taxes that become payable to a governmental unit while the case is pending;

court has previously noted, the Debtor's Confirmed Plan does not provide for the· payment of post-petition claims that may be deemed allowable under § 1305.

> [I]f the debtor is to obtain a discharge of a postpetition consumer debt, two prerequisites are mandated by § 1328:(1) the debt must be provided for by the plan, *i.e.,* "the plan must make a provision for it, *i.e.,* deal with it, or refer to it"; and (2) if "practicable," prior approval by the trustee of the debtor's incurring such debt must have been obtained. Further, the postpetition consumer debt still will not be discharged unless the creditor voluntarily chooses to file a proof of claim.

*In re Trentham*, 145 B.R. 564, 568 (Bankr. E.D.Tenn.1992). To say it another way,

> The debtor is not required to provide for postpetition claims in a plan. If the plan does not provide for postpetition claims, no such claims may be paid under the plan, even if a postpetition creditor files a claim.... A postpetition claim may not be paid and discharged in a chapter 13 case unless all of the following are true:
>
> ● The plan provides for postpetition claims.
>
> ● The entity holding the postpetition claim files a proof of claim; and
>
> ● The claim is a tax claim, or a claim for a consumer debt necessary for the debtor's performance under the plan and meets the requirements of section 1305(c).

8 COLLIER ON BANKRUPTCY ¶ 1322.10 (15th ed. rev.2005).

■ Because the Debtor's Confirmed Plan does not provide for the payment of post-petition claims, the court need not consider Countrywide's "Post–Petition Proof of Claim" within the context of § 1305. Therefore, any claim by Countrywide that is truly post-petition, *i.e.,* arose after commencement of the Debtor's bankruptcy case, will be unaffected by any discharge obtained by the Debtor under § 1328(a).

■ "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C.A. § 502(a) (West 2004); *see also* FED. R. BANKR. P. 3002(a); FED. R. BANKR. P. 3007 (setting forth the procedure for objections to claims). A party objecting to a claim bears the burden of "presenting evidence to rebut or cast doubt upon, the creditor's proof of claim ... [and] produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency[,] ... [at which point], the burden reverts to the claimant to prove the validity of the claim ... by a preponderance of the evidence." *In re Giordano,* 234 B.R. 645, 650 (Bankr.E.D.Pa.1999) (quoting *Galloway v. Long Beach Mortgage Co. (In re Galloway),* 220 B.R. 236, 243–44 (Bankr.E.D.Pa.1998)); *see also In re Walsh,* 264 B.R. 482, 484 (Bankr. N.D.Ohio 2001); *Namer v. Sentinel Trust Co. (In re AVN Corp.),* 248 B.R. 540, 547 (Bankr.W.D.Tenn.2000).

■ The validity of a proof of claim stems from the status of a party as a creditor of the debtor. The Bankruptcy Code defines "creditor" as "[an] entity that

---

or (2) that is a consumer debt, that arises after the date of the order for relief ... and that is for property or services necessary for the debtor's performance under the plan." 11 U.S.C.A. § 1305(a). Additionally, a claim for a consumer debt filed pursuant to

§ 1305(a)(2) "shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained." 11 U.S.C.A. § 1305(c).

has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C.A. § 101(10)(A) (West 2004). Claim is defined as follows:

> (A) [the] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) [the] right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C.A. § 101(5) (West 2004).[6] "The House and Senate Reports state that '[b]y this broadest possible definition [of the term "claim"] ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'" *Egleston v. Egleston (In re Egleston)*, 448 F.3d 803, 812 (5th Cir.2006) (quoting *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 317 (5th Cir.1996) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 5787)). "'[B]y using the broadest possible language to describe the rights to payment which constitute the claims under subsection [101(5)(A)], Congress expressed unequivocally the intention that all monetary rights be asserted and resolved in the bankruptcy proceeding.'" *Roach v. Edge (In re Edge)*, 60 B.R. 690, 692–93 (Bankr.M.D.Tenn.1986) (quoting Timothy B. Matthews, *The Scope of Claims Under the Bankruptcy Code (First Installment)*, 57 Am. Bankr. L.J. 221, 223 (Summer 1983)). "Although the definition of claim is broad, the existence of a valid bankruptcy claim depends on (1) whether the claimant possessed a right to payment and, (2) whether that right arose before the filing of the petition." *Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prods. Corp.)*, 225 B.R. 862, 866 (Bankr.S.D.N.Y.1998).

Countrywide classified the March 20, 2006 Claim as a post-petition claim. In support of its claim, Countrywide argues that the underlying debt arose post-petition, and therefore, it properly falls within the scope of § 1305(a)(2). As previously discussed, because the Confirmed Plan does not provide for the payment of post-petition claims under § 1305(a), Countrywide's "Post–Petition Proof of Claim" could not be allowed and paid as such through the Confirmed Plan even if it were found, in fact, to be a § 1305(a)(2) claim.

■■■ The court must, however, determine whether the claim arose post-petition or whether it actually arose pre-petition. The answer to this question depends upon what is meant by "[the] right to payment" as set forth in § 101(5)(A). The term is not defined in the Bankruptcy Code, but the Supreme Court has held that "[t]he plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation, regardless of the objectives the State seeks to serve in imposing the obligation." *Pa. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990). "A claim exists only if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all

---

6. The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C.A. § 101(12) (West 2004).

the elements necessary to give rise to a legal obligation—'a right to payment'—under the relevant non-bankruptcy law." *In re Nat'l Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex.1992). Nevertheless, "it is well settled that federal law governs *when* a claim arises." *In re Parks*, 281 B.R. 899, 902 (Bankr.E.D.Mich.2002). Courts have generally utilized three approaches when making this determination: (1) the accrued state law claim approach; (2) the conduct approach; and (3) pre-petition relationship approach. *Epstein v. Official Comm. of Unsecured Creditors of Piper Aircraft Corp.*, 58 F.3d 1573, 1576 (11th Cir.1995).

Generally, the accrued state law claim test focuses upon the notion that "while federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.'" *Avellino v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332, 337 (3d Cir.1984) (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946)). Also known as the "right to payment" approach, courts following it have held that "a 'claim' does not arise in bankruptcy until a cause of action has accrued under non-bankruptcy law." *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1275 (5th Cir.1994) (citing *M. Frenville Co.*, 744 F.2d at 337). This approach has been rejected "as inconsistent with the broad statutory definition of a 'claim' and with 'the overriding goal of the Bankruptcy Code to provide a "fresh start" for the debtor.'" *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 928 (9th Cir. 1993) (quoting *Jensen v. Cal. Dep't of Health Servs. (In re Jensen)*, 127 B.R. 27, 31 (9th Cir. BAP 1991) (citations omitted)); *Edge*, 60 B.R. at 696 ("The plain meaning of §§ [101(5)] and 502(b)(1) is that state law will not control the existence or allow-

ance of a bankruptcy claim where under state law the right to payment depends only on one or more of the enumerated disabling characteristics [that the right is contingent, unmatured, etc.].").

The conduct approach focuses upon when the underlying acts or conduct forming the basis of the right to payment occurred. *See Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 203 (4th Cir.1988) ("We do not believe that there must be a right to the immediate payment of money … when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition, to constitute a claim[.]"). Accordingly, as long as "[the] debtor's conduct forming the basis of liability occurred pre-petition, a 'claim' arises under the Code when that conduct occurs, even though the injury resulting from this conduct is not manifest at the commencement of the bankruptcy proceedings." *Lemelle*, 18 F.3d at 1275; *see also Edge*, 60 B.R. at 705 (holding that "a right to payment and thus a claim [arises] at the time of the debtors' prepetition misconduct."). This approach has been criticized as being too liberal and "patently unfair to creditors because it would allow a [debtor] … [to] receive a discharge from any liabilities before the … creditor [ ] ever has a reason to know about the debtor's involvement[.]" *Signature Combs, Inc. v. United States*, 253 F.Supp.2d 1028, 1035 (W.D.Tenn.2003).

The final method, the relationship approach, focuses upon "whether there was a pre-petition relationship between the debtor and the creditor such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed." *Parks*, 281 B.R. at 902. Courts employing the relationship approach "have not viewed the timing of a debtor's negligent conduct as dispositive of when a 'claim' arises under the Code. Instead, they have determined that a claim arises

at the time of the debtor's negligent conduct forming the basis for liability only if the claimant had some type of specific relationship with the debtor at that time." *Lemelle,* 18 F.3d at 1276. This test "requires 'some pre-petition relationship, such as contact, exposure, impact, or privity, between the debtor's pre-petition conduct and the claimant' in order for the claimant to hold a § 101(5) claim." *Piper Aircraft Corp.,* 58 F.3d at 1577 (citations omitted) (noting that "the courts applying the conduct test also presume some pre-petition relationship between the debtor's conduct and the claimant."). Accordingly, "where the parties could have fairly contemplated a claim prior to bankruptcy, the claim will be held to have arisen pre-petition, even when the actual right to payment matures post-petition." *In re Emelity,* 251 B.R. 151, 156 (Bankr.S.D.Cal.2000).[7]

The Sixth Circuit has not adopted any of the aforementioned methods for determining when a claim arises for the purpose of § 101(5); however, other courts within the Circuit have adopted either the relationship/fair contemplation approach or the conduct approach. *See, e.g., Signature Combs,* 253 F.Supp.2d at 1038 (fair contemplation approach concerning CERCLA claim); *Parks,* 281 B.R. at 902 (relationship/fair contemplation approach concerning fraud and indemnification claim); *Edge,* 60 B.R. at 705 (conduct approach concerning claim for negligent dental treatment).

The *Parks* court relied heavily upon the following analysis set forth in *Corman v. Morgan (In re Morgan),* 197 B.R. 892

(N.D.Cal.1996), in its rejection of the conduct approach and its adoption of the relationship/fairly contemplated approach:

[The] "fairly contemplated" test is the most appropriate of the above tests for determining when Corman's claim arose.... [A] creditor pursuing a fraud claim against a bankrupt presents a court with conflicting objectives.

On the one hand is the objective of giving the debtor a fresh start. Providing debtors this fresh start is the overriding goal of the Code. The objective of giving debtors a fresh start therefore supports adopting a very broad definition "claim" in this case, perhaps even to the extent of adopting the "debtor's conduct" approach ....

On the other hand is the objective of not allowing debtors to use the Code as a shield for fraudulent conduct. One way in which this objective manifests itself is the judicial doctrine which limits discharge to innocent debtors. Another way this objective manifests itself is Code §§ 523(a)(2) and (4), which except debts for fraud from discharge.

Adoption of the "fairly contemplated" test is the best way to balance the Code's fresh start policy, on the one hand, and its measured hostility to fraud, on the other. On the one hand, adoption of this test will serve the goal of giving debtors a fresh start by forcing all creditors who know or should know before confirmation of their fraud claims against the debtor to bring those claims in the bankruptcy case, thus allowing those claims to be resolved under the

---

7. In some cases primarily involving environmental liability, courts have separated the relationship aspect from the "fair contemplation" approach to form a fourth option, whereby "a claim accrues when the potential [tort] claimant, at the time of bankruptcy, 'could have ascertained through the exercise of reasonable diligence that it had a claim'

against the debtor[.]'' *Signature Combs, Inc. v. United States,* 253 F.Supp.2d 1028, 1037 (W.D.Tenn.2003) (analyzing when a claim arises under the Comprehensive Environmental Response, Compensation and Liability Act); *see also Cal. Dep't of Health Servs. v. Jensen (In re Jensen),* 995 F.2d 925, 930–31 (9th Cir.1993).

Code's special provisions for fraud and discharge. On the other hand, adoption of this test will prevent bankruptcy from being used as a shield for fraud by allowing fraud claims to go forward against debtors who concealed their fraud prior to discharge.

*Parks,* 281 B.R. at 903 (quoting *Morgan,* 197 B.R. at 898–99 (citations and footnotes omitted)).

██ The court agrees with the well-reasoned *Morgan* analysis and adopts the relationship/fair contemplation test for determining whether a claim arises pre-petition or post-petition. A claim is a pre-petition claim within the scope of § 101(5)(A) if there was a relationship, existing pre-petition, between the debtor and the creditor such that the creditor could fairly contemplate the possibility of a claim against the debtor's bankruptcy estate at the time that the bankruptcy petition was filed. Otherwise, the claim is post-petition.

██ In this case, utilizing the relationship/fair contemplation method, the court finds that Countrywide had a pre-petition "right to payment" of the escrow advances from the Debtor. The Debtor executed a promissory Note and Deed of Trust granting Countrywide a security interest in his Residence on June 10, 1977. The Deed of Trust provides, in material part:

This conveyance is made in trust, however, to secure the payment of the principal sum of Twenty Four Thousand Three Hundred Fifty and no/100 Dollars ($24,350.00), evidenced by a promissory note of even date herewith, executed by [the Debtor] to [Countrywide], with Interest from date at the rate set forth in said note on the unpaid balance until paid. The said principal and interest shall be payable ... in monthly installments of One Hundred Eighty Seven and 25–100 Dollars ($187.25), commenc-

ing on the first day of July, 1977, and on the first day of each month thereafter until the principal and interest are fully paid, except that the final payment of principal and interest, if not sooner paid, shall be due and payable on the first day of June 2007.

The [Debtor], in order more fully to protect the security of this Deed of Trust, does hereby covenant and agree as follows:

1. That he will pay the indebtedness as herein provided. Privilege is reserved to pay the debt in whole, or in an amount equal to one or more monthly payments on the principal that are next due on the note, on the first day of any month prior to maturity; provided, however, that written notice of an intention to exercise such privilege is given at least thirty (30) days prior to prepayment.

2. That, together with and in addition to the monthly payment of principal and interest payable under the terms of the note secured thereby, he will pay to [Countrywide], on the first day of each month until the note is fully paid, the following sums:

. . . .

(b) A sum equal to the ground rents, if any, and the taxes and special assessments next due on the premises covered by this Deed of Trust, plus the premiums that will next become due and payable on policies of fire and other hazard insurance on the premises covered hereby (all as estimated by [Countrywide]) less all sums already paid therefor divided by the numbers of months to lapse before one month prior to the date when such ground rents, premiums, taxes, and assessments will become delinquent, such sums to be held by [Countrywide] in trust to pay said ground rents, premi-

ums, taxes, and special assessments, before the same become delinquent[.]

4. That he will pay all taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions, ... and in default thereof [Countrywide] shall have the right to pay the same. If the [Debtor] shall fail to pay any fire or other hazard insurance premiums, ... [Countrywide] shall have the right to pay the same, and all sums so advanced shall be secured hereby .... [Countrywide] shall also have the right to make any payment which the [Debtor] should have made, and [Countrywide] may also pay any other sum that is necessary to protect the security of this instrument. All such sums ... shall be secured hereby ... [.]

DEED OF TRUST at 1–2. There is no dispute that the Debtor and Countrywide had an on-going relationship pre-dating the date upon which the Debtor filed his bankruptcy petition. Accordingly, the court must determine if this relationship was the type by which Countrywide could fairly contemplate the possible existence of a claim for escrow advances.

▮▮▮▮ The Bankruptcy Code does not define what constitutes an unmatured debt or claim, but Black's Law Dictionary defines a "matured claim" as a "[c]laim which is unconditionally due and owing." BLACK'S LAW DICTIONARY 979 (6th ed.1990). So, by negative implication, an "unmatured claim" is a claim which is not yet due and owing. As evident from the Deed of Trust, the Debtor has been obligated to pay, and Countrywide has been entitled to payment of the escrow amounts set forth therein from June 10, 1977, the date the Debtor executed the Deed of Trust. Therefore, the Debtor's obligation to pay escrow funds to Countrywide constituted an unmatured liability of the Debtor up until the time the Debtor missed his first

payment. Once the Debtor failed to make an escrow payment, Countrywide was authorized under the Deed of Trust to advance the payment in order to protect the property, thus transforming the past due amounts into a matured liability of the Debtor, while all amounts that were not yet due remained unmatured. The Bankruptcy Code's broad definition of "claim" includes both unmatured and matured liabilities of the Debtor, including the escrow payments required under the Deed of Trust. "A claim does not arise post-petition simply because the time for payment is triggered by an event that happens after the filing of the petition. As a result, 'it is possible that a right to payment that is not yet enforceable at the time of filing of the petition under non-bankruptcy law, may be defined as a claim with [§ ] 101(5)(A) of the Bankruptcy Code.' " *In re Fretter, Inc.,* No. 96–15177, 2000 Bankr.LEXIS 1429, at *11, 2000 WL 1780256, at *3 (Bankr.N.D.Ohio Sept.29, 2000) (quoting *Federated Dep't Stores, Inc. v. Wongco (In re R.H. Macy & Co., Inc.),* 236 B.R. 583, 589 (Bankr.S.D.N.Y.1999)).

Additionally, Countrywide has been aware from the outset of this bankruptcy case that the Debtor was not making escrow payments and that it would be required to make the escrow advances necessary to pay the annual taxes and insurance obligations attributable to the Debtor's residence. In fact, it has made all escrow advances since the Debtor filed his case in May 2001. Since the parties have stipulated that Countrywide advanced $372.20 prior to the filing of the Debtor's bankruptcy case, Countrywide had knowledge, pre-petition, that the Debtor was not making his required escrow payments. Moreover, Countrywide negotiated its treatment under the August 28, 2002 Confirmed Plan and expressly limited the payments it was to receive under the Confirmed Plan to

principal and interest. For unexplained reasons, Countrywide, through the Confirmed Plan, eliminated the Debtor's obligation to make the monthly escrow payments.

Based upon the pre-petition relationship between the parties, as well as the contractual obligations of the Debtor under the June 10, 1997 Deed of Trust, the court finds that the escrow payments advanced by Countrywide after the Debtor commenced his bankruptcy case are, in fact, pre-petition obligations that matured post-petition, but nonetheless arose pre-petition such that they are covered within the definition of claim set forth in § 101(5)(A).

### III

■ Because the court finds that Countrywide's $8,563.62 claim asserted in its March 20, 2006 "Post–Petition Proof of Claim" arose pre-petition, irrespective of its characterization by Countrywide, the next issue is whether the claim should be disallowed in its entirety because the provisions of the Confirmed Plan fixed Countrywide's secured claim at $11,285.56 plus 8.5% interest.

■ The Debtor's Confirmed Plan triggered application of the following statute on August 28, 2002:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C.A. § 1327 (West 2004). Prior to confirmation, creditors are given the opportunity to object thereto, *see* 11 U.S.C.A. § 1324(a) (West 2004), and "[i]f no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law[.]" FED. R. BANKR. P. 3015(f). Creditors who fail to object to a Chapter 13 plan are deemed to have accepted the terms within. *In re Vankell,* 311 B.R. 205, 210 (Bankr.E.D.Tenn.2004). Accordingly, a confirmed Chapter 13 plan is res judicata, and as such, absent a default under the terms of the confirmed plan, creditors are precluded from making post-confirmation assertions of any interest other than those specifically provided for in the plan. *In re Crowley,* 258 B.R. 587, 591 (Bankr.D.Vt. 2000). This accomplishes the purpose of § 1327(a) by granting "finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order." *In re Thaxton,* 335 B.R. 372, 374 (Bankr.N.D.Ohio 2005).

The opportunity to object to the plan is not merely an option to be exercised at the convenience of the creditors. The policy favoring finality of a plan places an obligation on creditors to make a timely objection prior to plan confirmation.... "It would hardly serve the purposes for which the federal bankruptcy laws were intended to permit a dissatisfied creditor to withhold its opinion of the practicality and fairness of a debtor's plan until after that plan has been completed. At such a late point in time, a meaningful modification of the plan is difficult, if not impossible, and the objecting creditor is in a position to circumvent the protective shield provided

debtors under Chapter 13." *In re Gregory,* 19 B.R. 668, 670 (9th Cir. BAP 1982). Therefore, "where adequate notice has been provided to claimants regarding the plan confirmation process, most courts, citing § 1327, prohibit further litigation of all issues which were or could have been litigated at or before the confirmation hearing." *In re Sanders,* 243 B.R. 326, 331 (Bankr.N.D.Ohio 2000).

*Thaxton,* 335 B.R. at 374–75 (internal citations omitted).

■ Following confirmation, the plan "is treated as the exclusive and transcendent relationship between the debtor and the creditor." *Salt Creek Valley Bank v. Wellman (In re Wellman),* 322 B.R. 298, 301 (6th Cir. BAP 2004). As such, " 'creditors are limited to those rights that they are afforded by the plan, [and] they may not take actions to collect debts that are inconsistent with the method of payment provided for in the plan.' " *United States v. Richman (In re Talbot),* 124 F.3d 1201, 1209 (10th Cir.1997) (quoting 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1] (Lawrence P. King ed., 15th ed.1996)). "[A] creditor cannot thereafter assert any other interest than that provided for him in the confirmed plan and that all of the issues of adequate protection, lack of equity, . . . etc., could and should have been raised in objections to confirmation." *Wellman,* 322 B.R. at 301 (quoting *Ford Motor Credit Co. v. Lewis (In re Lewis),* 8 B.R. 132, 137 (Bankr.D.Idaho 1981)).

In this case, Countrywide is bound by the terms of the Confirmed Plan, and its claim is limited to $11,285.56 as provided therein. Countrywide not only failed to timely object to the Debtor's proposed plan, but it expressly agreed to and negotiated the terms set forth therein, which were modified in part to change the treatment of Countrywide's claim, as evidenced by the Modification of Plan Prior to Confirmation dated August 6, 2002. Prior to the August 6, 2002 pre-confirmation modification, the Debtor's proposed plan provided for payment of Countrywide's claim in monthly installments of $287.00 plus interest at the contractual rate until the balance was paid in full. As confirmed, however, the Plan provides for payment "in full" of Countrywide's claim in the specified amount of $11,285.56, payable in monthly installments of $287.00 plus 8.5% interest. The pre-confirmation modification expressly changed the treatment of Countrywide's claim by providing it with a fixed secured claim of $11,285.56 and the 8.5% interest rate.

Countrywide negotiated its own treatment in the Confirmed Plan, and it cannot now seek to revise that treatment because it failed to include an additional amount necessary to satisfy the Debtor's escrow obligation. *See Thaxton,* 335 B.R. at 375 ("[A creditor] cannot excuse or otherwise circumvent its failure to file a timely objection by filing a Proof of Claim for a higher arrearage amount, merely because it may have been entitled to such a recovery had the issue been raised properly. A . . . proof of claim is not an alternate forum for the creditor to raise objections that were not made before plan confirmation.").

Because Countrywide is bound by the terms of the Confirmed Plan, its March 20, 2006 Claim must be disallowed.

**IV**

■ The final question is, assuming the Debtor completes his payments under the Confirmed Plan, whether Countrywide's March 20, 2006 Claim will be discharged because it is provided for by the Confirmed Plan and is not subject to any statutory exception. Discharge under Chapter 13 is governed by 11 U.S.C.A. § 1328, which provides, in material part

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

> (1) provided for under section 1322(b)(5) of this title;
>
> (2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title; or
>
> (3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime.

11 U.S.C.A. § 1328(a).

As an initial matter, Countrywide's claim is clearly "provided for" in the Debtor's Confirmed Plan. Although not defined in the Bankruptcy Code, the Supreme Court has defined "provided for" as meaning " '[to] make a provision for' or 'stipulate to' something in a plan." *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993). Countrywide is expressly named in both the Amended Chapter 13 Plan filed July 25, 2002, and the Modification of Plan Prior to Confirmation dated August 6, 2002, which collectively form the Debtor's Confirmed Plan. Furthermore, it is undisputed that Countrywide negotiated treatment of its secured claim as provided for in the Confirmed Plan.

Of the three statutory exceptions to a Chapter 13 discharge, the only arguable exception that might be deemed applicable in this case is subsection (a)(1), regarding debts provided for under § 1322(b)(5), which provides that a Chapter 13 plan may

"notwithstanding paragraph (2) of this subsection, provide for ... maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]" [8] Under § 1322(b)(5), maintenance payments under a long term mortgage are not discharged, and thus remain ongoing payment obligations following discharge.

Here, although Countrywide's claim is secured by the Debtor's residence, "[t]he mortgage is scheduled to mature on June 1, 2007, one month after the Debtor is scheduled to be discharged in this case. Therefore, the mortgage is scheduled as a pay in full in this case." JT. STIPS. at ¶ 3. Furthermore, the monthly principal and interest payment required under the Confirmed Plan is $287.00 and not the monthly contract maintenance payment of $187.25 called for under the June 10, 1977 Note and Deed of Trust. In effect, the Debtor and Countrywide negotiated a cramdown of Countrywide's secured claim pursuant to 11 U.S.C.A. § 1325(a)(5)(B)(ii) (West 2004). As none of the statutory exceptions to § 1328(a) are present, the $8,563.62 claim reflected in Countrywide's March 28, 2006 "Post–Petition Proof of Claim" will be discharged upon completion of all payments required of the Debtor under the Confirmed Plan.

For the reasons stated herein, an order will be entered sustaining the Debtor's Objection to Claim and disallowing Countrywide's "Post–Petition Proof of Claim."

---

8.  "[The plan may] modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]" 11 U.S.C.A. § 1322(b)(2).